UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEPHEN B.,[1]

    **Plaintiff,**

v.

Case No. 3:21-cv-00227
Magistrate Judge Norah McCann King

COMMISSIONER OF SOCIAL SECURITY,[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Stephen B. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 9, *Defendant's Memorandum in Opposition*, ECF No. 14, *Plaintiff's Reply*, ECF No. 15, and the *Certified Administrative Record*, ECF No. 7. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants Plaintiff's request that the matter be remanded to the Commissioner, pursuant to Sentence Six of 42 U.S.C. § 405(g), for consideration of new and material evidence.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.  PROCEDURAL HISTORY

On September 5, 2019, Plaintiff—who meets the insured status requirements of the Social Security Act through December 31, 2024, R. 30[3]—protectively filed his application for benefits, alleging that he has been disabled since February 11, 2019, due to both physical and mental impairments. *See* R. 28, 156-62. The application was denied initially and upon reconsideration and Plaintiff requested a *de novo* hearing before an administrative law judge. R. 106-07. Administrative Law Judge ("ALJ") Heidi Southern held a hearing on October 21, 2020, at which Plaintiff, who was represented by a non-attorney representative, testified, as did a vocational expert. R. 46-73. In a decision dated November 2, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from February 11, 2019, Plaintiff's alleged disability onset date, through the date of that decision. R. 28-41. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 24, 2021. R. 1-7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 22, 2022, the case was reassigned to the undersigned. ECF No. 11. The matter is ripe for disposition.

II. LEGAL STANDARD

A.  Standard of Review

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The

---

[3] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

B.     **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

4

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 49 years old on February 11, 2019, his alleged disability onset date. R. 39. He subsequently changed age category to closely approaching advanced age. *Id.* At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between the alleged disability onset date and the date of the ALJ's decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease; tenosynovitis and/or carpal tunnel syndrome of the left wrist; obstructive sleep apnea; obesity; and post-traumatic stress disorder. *Id.* The ALJ also found Plaintiff's chronic pain syndrome was not an independent condition, but was instead a symptom of Plaintiff's severe impairments. R. 31.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20

5

> CFR 404.1567(b) with the following exceptions: No more than frequent handling and fingering with the left upper extremity. No more than frequent balancing. No more than occasional stooping, kneeling, crouching, crawling, pushing and/or pulling with the right lower extremity, or climbing of ramps and stairs. No crawling. No climbing of ladders, ropes, or scaffolds. No exposure to unprotected heights or moving mechanical parts. No more than occasional contact with supervisors, co-workers, or the general public as part of work duties. No tandem tasks, teamwork or over-the-shoulder supervision.

R. 33. The ALJ also found that this RFC did not permit the performance of Plaintiff's heavy past relevant work as a structural steel worker. R. 38.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* jobs as a small products assembler, office helper, and inspector and hand packager—existed in the national economy and could be performed by Plaintiff despite his lessened capacity. R. 40. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 11, 2019, his alleged disability onset date, through the date of the decision. *Id*.

Plaintiff asks that the matter be remanded to the Acting Commissioner for consideration of new and material evidence and, alternatively, argues that the ALJ improperly evaluated Plaintiff's subjective complaints. *Plaintiff's Statement of Errors*, ECF No. 9, PageID# 739, 745.[4]

IV.   **EVIDENCE BEFORE THE ALJ**

An MRI of Plaintiff's lumbar spine administered in October 2018 revealed mild concentric spondylotic disc displacement at L5-S1 with a left foraminal extrusion resulting in moderate left foraminal narrowing, "likely contribut[ing] to the patient's left-sided symptoms," and mild concentric spondylotic disc displacement at L4-L5 with a central and slightly leftward disc protrusion with annular rent effacing the descending left L5 nerve root, which "also may

---

[4] Plaintiff also suggests, in passing in a footnote, that the ALJ erred in her evaluation of the opinion of Plaintiff's treating neurosurgeon. Because this contention is undeveloped by Plaintiff, the Court will not address the merits of any such contention.

6

contribute to patient's left lower extremity radiculopathy symptoms." R. 296. Matthew Merz, M.D., diagnosed lumbar spondylosis with failed laminectomy syndrome and bilateral L5 radiculopathy and prescribed physical therapy. R. 317. Plaintiff also underwent steroid injections. R. 291-92.

      In May 2019, Nicolas Grisoni, M.D., performed an anterior lumbar interbody fusion of L4-S1 with an anterior plate at L5-S1 and allograft, due to post-discectomy collapse of L4-5, L5-S1, with recurrent disc protrusions at L4-S1, degenerative disc disease at L4-S1, and bilateral lower extremity radiculopathy and back pain. R. 332-35. An August 2019 x-ray showed a solid fusion. R. 476. At a follow up with Dr. Grisoni that same month, Plaintiff reported improvement in his symptoms. R. 474. On examination, Dr. Grisoni noted neurogenic claudication, *id.*, and found intact gross motor function but decreased range of motion in the lumbar spine. R. 475. Dr. Grisoni opined that Plaintiff could not return to his former "heavy labor," and might "be a candidate for long-term disability." R. 476.

      In his September 2019 Function Report, R. 218-26, Plaintiff stated that he cannot stand for long periods of time, lift "anything heavy," or "walk long distances." R. 218. He could walk "50 yards"[5] before needing to stop and rest. R. 224. "There are days" when his wife must help him with his personal care. R. 220. He cannot perform household chores or yard work because of back pain, but can drive "short distances." R. 221-22. He uses a cane or a brace, as needed. R. 225. He takes over the counter or prescribed medication for pain. R. 226.

      In October 2019, David Knierim, M.D., reviewed the record on behalf of the state agency and completed an RFC assessment. R. 78-80. Dr. Knierim found that the record documented diagnoses of post discectomy collapse at L4-5 and L5-S1, degenerative disc disease at L4-S1,

---

[5] The state agency reviewing physicians read Plaintiff's report as indicating that he can walk "80 yds." before needing to stop and rest. R. 77, 85.

and bilateral lower extremity radiculopathy, status post anterior fusion, status post anterior lumbar interbody fusion at L4-S1 with anterior plate at L5-S1 and allograft. R.78. However, Dr. Knierim opined that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of his symptoms were not substantiated by the objective medical evidence alone, but are "[p]artially consistent" with the total medical and non-medical evidence. R. 77. According to Dr. Knierim, Plaintiff could perform a limited range of light work. R. 78.

At a November 2019 follow up appointment with Dr. Grisoni, Plaintiff again reported improvement in his preoperative symptoms. R. 525. Dr. Grisoni noted a well-healed incision, intact gross motor sensory, but decreased range of motion of the lumbar spine. R. 526. The doctor diagnosed low back pain, radiculopathy of the lumbosacral region, post-laminectomy syndrome, and fusion of the lumbar spine. *Id*. He recommended continued stretching and core exercises. R. 527. Dr. Grisoni again opined that Plaintiff could not return to heavy manual labor. R. 523.

In December 2019, Leanne Bertani, M.D., reviewed the record on reconsideration for the state agency, R. 85-87, and generally agreed with Dr. Knierim's assessment. R. 87.

In September 2020, *i.e.,* approximately ten months after he had last treated Plaintiff, *see* R. 695, Dr. Grisoni completed a check-the-box form in which he indicated that Plaintiff suffers residual leg and back pain which is "chronic and unremitting." R. 695-96. Asked if, as a result of pain, Plaintiff would have difficulty concentrating and attending to even simple, routine, repetitive tasks on a regular sustained basis, Dr. Grisoni checked "Yes." R. 696. Asked if, as a result of his impairments and residual function, Plaintiff has been able to consistently sustain work activity on a 40-hour work week basis without missing in excess of two or more days per month due to pain or taking frequent breaks, Dr. Grisoni checked "No." *Id.* Dr. Grisoni also

indicated that Plaintiff does not require a cane. *Id.* Asked to offer any additional comments on Plaintiff's condition and RFC, Dr. Grisoni stated, "Pt is s/p anterior/posterior lumbar fusion." *Id.*

On October 1, 2020, Plaintiff saw Dennis A. Bingham, M.D., for complaints of back and leg pain radiating down the right leg that had begun after Plaintiff had laid some flooring. R. 697. On clinical examination, Dr. Bingham noted normal right hip range of motion with lumbar and right sciatic groove tenderness. R. 698. The doctor diagnosed right-sided sciatica, administered an injection, and prescribed pain medication. R. 701. The doctor also instructed his patient to "minimize an[y] prolonged periods of standing, walking, sitting, bending, squatting or kneeling in addition to any" repetitive lifting, bending, or rotational movement of the torso "for the next 7-10 days." *Id.*

Plaintiff testified at the administrative hearing that he suffers chronic pain secondary to post-laminectomy syndrome. R. 52. Muscle spasms and cramping in his legs require that he stretch and lie down, a process that can last from 30 minutes to eight hours. R. 62-63. He has difficulty carrying a gallon of milk and relies on his wife to perform all the yardwork and other household chores. R. 57, 60. His wife does most driving because Plaintiff has pain in his right leg. R. 53, 57. His leg sometimes gives out when climbing stairs. R. 66. He acknowledged that he had recently attempted to lay flooring because he believed that his condition had improved sufficiently that he could do so; however, he "proved [him]self wrong" and hired someone to finish the job. R. 58. He estimated that he can sit and stand for about 10 minutes before needing to change position. R. 60. He also experiences difficulty bending over and then standing upright. R. 57. He occasionally uses a cane. R. 59. Medication does not really help his pain. R. 59.

In her decision, the ALJ stated that she was "substantially persuaded" by the opinions of the state agency reviewing physicians:

9

> The undersigned is substantially persuaded by the opinions of David Knierim, M.D., and Leanne Bertani, M.D., given on behalf of the Division of Disability Determination (DDD) at the initial and reconsideration levels, respectively. Both reviewing physicians opined that the claimant is capable of exertion consistent with light-level work, subject to a number of postural, climbing, manipulative, and hazard exposure limitations. The undersigned finds these recommendations substantially consistent with the medical record, and has therefore adopted the recommendations as the claimant's residual functional capacity, making only a few clarifying adjustments for consistency with regulatory requirements and the use of vocationally defined terms.

R. 37 (citations to record omitted).

The ALJ was "not persuaded" by Dr. Grisoni's September 2020 opinion:

> Although Dr. Grisoni has a treating relationship with the claimant, his opinion does [not] offer specific function-by-function recommendations of any changes in the claimant's abilities and limitations as a result of his condition. Instead, it includes a brief list of the claimant's diagnoses and symptoms, a few check-the-box concurrences with conclusory statements prepared by the claimant's representative, and no narrative explanation for these conclusions. In the absence of specific function-by function analysis, prepared by Dr. Grisoni and based on his independent critical evaluation of the claimant's abilities and limitations, the undersigned is unpersuaded by this report.

R. 38 (citation to record omitted).

## V. DISCUSSION

### A. The ALJ's Evaluation of Plaintiff's Subjective Complaints of Pain

Plaintiff contends that the ALJ erred in her evaluation of Plaintiff's subjective complaints of pain. *Plaintiff's Statement of Errors*, ECF No. 9, PageID# 739, 745.

In evaluating a claimant's subjective complaints, such as pain, an ALJ must follow a two-step process. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). An ALJ must first consider whether there is an underlying medically determinable physical or mental impairment that "could reasonably be expected to produce [the claimant's] alleged symptoms," such as pain. 20 C.F.R. § 404.1529(b), (c)(2). *See also* SSR 16-3p, 2017 WL 5180304, *3. Once an underlying physical or mental impairment that could reasonably be expected to produce a

10

claimant's alleged symptoms is established, an ALJ must then evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1529(c)(4). *See also* SSR 16-3p, 2017 WL 5180304, *4.  In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, although an ALJ's evaluation in this regard must be supported by substantial evidence, the ALJ has wide discretion to weigh the claimant's subjective complaints and "may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citing *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)).

In her decision, the ALJ accurately referred to the applicable standard for considering a claimant's subjective symptoms, R. 33-34 (citing 20 C.F.R § 404.1529, S.S.R. 16-3p), but found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms

> are inconsistent because the record does not appear to reflect the severe level of symptomology alleged and implied by the claimant's complaints. . . .
>
> In terms of his physical condition, the claimant's complaints of pain and limitation are also inconsistent with his activities. Although he testified that he has to change positions every ten minutes and cannot lift more than a gallon of

11

> milk or help with most household chores, he also testified that, as recently as three weeks before the hearing, he thought that he had improved to the point where he could do more physical tasks, such as laying flooring. Although he was unable to complete the task due to aggravating his pain symptoms, and had to receive medical treatment for additional pain symptoms, the fact that he felt strong enough to attempt such a physically arduous task indicates a level of functional improvement and ability inconsistent with the extreme level of limitation suggested by the claimant's allegations.

R. 37 (citation to record omitted).

Plaintiff complains that, in evaluating Plaintiff's complaint of chronic pain, the ALJ improperly focused on his single, unsuccessful attempt to lay flooring and ignored all other evidence demonstrating Plaintiff's impaired functioning because of pain. *Plaintiff's Statement of Errors*, ECF No. 9, PageID# 745-46. To the contrary, a fair reading of the ALJ's decision demonstrates that, in making her finding in this regard, the ALJ considered the entirety of the medical evidence, including Dr. Grisoni's observation that Plaintiff reported improvement in his symptoms in the months following his surgery. *See* R. 474, 525. It is significant, too, that Dr. Grisoni opined on both occasions that Plaintiff could not return to his former "heavy labor," and speculated on only one occasion that Plaintiff "may" qualify for long-term disability benefits. *See* R. 476, 523. The record contains substantial evidence in support of the ALJ's finding in this regard and, considering the wide discretion vested in an ALJ in evaluating a claimant's subjective complaints, *see Jones*, 336 F.3d at 476, this Court will not disturb her finding.

    **B.    Sentence Six Remand**

At the outset of the administrative hearing held on October 21, 2020, the ALJ noted, "[T]here's correspondence in the file that would seem to indicate there are still outstanding records. Is that still the case?" R. 50. In response, Plaintiff's representative indicated that the record was "complete." R. 50-51. Nevertheless, additional medical records were presented to the Appeals Council, which declined review and held that the additional evidence either "does not

12

show a reasonable probability that it would change the outcome of the decision," or post-dated the period at issue. R. 2. Plaintiff now asks that this Court remand the matter to the Commissioner, pursuant to Sentence Six of 42 U.S.C. § 405(g),[6] for consideration of this evidence.

When the Appeals Council denies a claimant's request for review, the decision of the ALJ becomes the final decision of the Commissioner. *Casey v. Secy. of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citing 20 C.F.R. § 404.955). Under such circumstances, a court called upon to review the final decision of the Commissioner is confined to a review of the ALJ's decision and the evidence presented to the ALJ. *See Jones,* 336 F.3d at 477 (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)). This Court has no authority to review the decision of the Appeals Council. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). However, this Court may remand the case for further administrative proceedings, pursuant to Sentence Six of 42 U.S.C. § 405(g), in light of new and material evidence upon a showing of good cause for not presenting that evidence in the prior proceeding. *See Cline*, 96 F.3d at 148 (citing *Cotton v. Sullivan*, 2 F.3d 692, 969 (6th Cir. 1993)). *See also Melkonyan v. Sullivan*, 501 U.S. 89, 98 n.1 (1991).

Evidence is "new," for purposes of this provision, if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990). Evidence is "material" if there is "'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented

---

[6] Sentence Six of 42 U.S.C. §405(g) provides that a court
    may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; . . .

13

with the new evidence.'" *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483-84 (6th Cir. 2006) (quoting *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001)). S*ee also Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

Moreover, a plaintiff must establish good cause for the failure to incorporate the new and material evidence into the prior proceeding. *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (6th Cir. 1984). A plaintiff may do so by demonstrating a reasonable justification for the failure to acquire and present the evidence at the administrative hearing. *Foster,* 279 F.3d at 357.

Failure to establish all three elements is fatal to a plaintiff's request under Sentence Six. *See Glasco v. Comm'r of Soc. Sec.*, 645 F. App'x 432, 435 (6th Cir. 2016). This standard also applies to evidence submitted for the first time to the Appeals Council. *Cline,* 96 F.3d at 148.

Plaintiff submitted to the Appeals Council records from two office visits with Dr. Bingham: the first occurred on October 22, 2020—*i.e.*, the day after the administrative hearing before the ALJ, R. 14-19; the second occurred on November 20, 2020—*i.e.,* after the ALJ had issued her decision on November 2, 2020, R. 8-13. During both visits, Plaintiff complained of persistent lower right back and leg pain, weakness and numbness. R. 8, 14-15. Dr. Bingham found decreased range of motion, tenderness, and spasm at both visits and, at the October 22 visit, positive straight leg raising on the right. R. 9, 15. Although Dr. Bingham diagnosed right-sided sciatica on October 1, 2020, at the October 22 visit, the doctor diagnosed lumbar radiculopathy in light of Plaintiff's persistent pain despite conservative treatment. R. 18. At the November 2 office visit, Dr. Bingham noted findings of decreased range of motion and tenderness of the lumbar spine "(lower, bilateral lumbar region)." R. 9. An MRI of the lumbar spine demonstrated a left-sided foraminal disc protrusion at L5-S1 with effacement of the left L5

exiting nerve root, and mild disc bulging with facet hypertrophy from L2 to L4. R. 8. Noting that the MRI revealed pathology on the left side, Dr. Bingham commented that this finding "of course, would be unlikely to account for" Plaintiff's complaints of right, lower-back pain. R. 12. Dr. Bingham diagnosed lumbar radiculopathy, sciatica of right side, and right hip pain. R. 13. He prescribed pain medication and authorized a disability placard. R. 11-12, 18. Dr. Bingham also referred Plaintiff to Dr. Grisoni for an additional neurosurgical evaluation. R. 12.

Plaintiff contends that these treatment notes are new because they were generated after the administrative hearing and are material because they serve to support Plaintiff's subjective complaints of pain, which the ALJ declined to fully credit; he argues that there is good cause for his failure to submit the records to the ALJ because they were not available to him at the time of the hearing. *Plaintiff's Statement of Errors*, ECF No. 9, PageID# 739-44. The Acting Commissioner disagrees with these points and, as did the Appeals Council, contends that the November 2020 treatment notes are not material because—having been generated after the ALJ issued her decision—they do not relate to the relevant time period. *Defendant's Memorandum in Opposition*, ECF No. 14, PageID# 765-70.

Even assuming, without deciding, that Plaintiff has not established good cause for his failure to present the treatment notes from the October 22, 2020, office visit to the ALJ at some point prior to the issuance of the ALJ's decision, the Court concludes that, with the submission of the November 20, 2020 treatment notes, Plaintiff has satisfied the standards governing a Sentence Six remand.

The treatment notes from the November 2020 office visit are clearly "new" because they were generated after the administrative hearing and the issuance of the ALJ's decision. For the same reasons, Plaintiff clearly had good cause for his failure to present that evidence to the ALJ.

15

The Appeals Council held and the Acting Commissioner argues that, because the relevant period at issue in this case ended with the issuance of the ALJ's decision on November 2, 2020, the November 20, 2020, treatment notes cannot be viewed as "material." This Court disagrees.

As noted above, proffered new evidence must be, *inter alia*, "material," *i.e.*, "there is a probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with new evidence." *Foster*, 279 F.3d at 357. Relatedly, the additional evidence must be time-relevant, *i.e.*, it must relate to the period on or before the date on which the ALJ rendered the decision. *See Wyatt,* 974 F.2d at 685 (holding that evidence of a later deterioration in the claimant's condition is not material).

The November 20, 2020, treatment notes were generated less than three weeks after the ALJ issued her decision and relate to Plaintiff's "persistent" complaints of back and leg pain. R. 18. Dr. Bingham diagnosed, *inter alia*, lumbar radiculopathy—the same diagnosis provided in November 2019 by Plaintiff's treating neurosurgeon, Dr. Grisoni. *See* R. 526. Significantly, Dr. Bingham also referred Plaintiff back to Dr. Grisoni for another neurosurgical consult. R. 12. The medical evidence before the ALJ documents long-standing back impairments, including lumbar radiculopathy, and the November 2020 office notes and MRI continue to document lumbar radiculopathy. Under these circumstances, the Court concludes that the records from Plaintiff's November 20, 2020, office visit with Dr. Bingham are material to the time period at issue in this case. Although this new evidence is not determinative, there is "'a reasonable probability" that the ALJ would have evaluated Plaintiff's subjective complaints of pain had she had this evidence before her. *See Foster*, 279 F.3d at 357.

VI.     **CONCLUSION**

**WHEREUPON,** the Court **REMANDS** the action to the Commissioner, pursuant to Sentence Six of 42 U.S.C. § 405(g), for consideration of new and material evidence.

The Clerk is **DIRECTED** to administratively close this case. The parties are **ORDERED** to advise the Court within 30 days of the Commissioner's final resolution of Plaintiff's application upon remand.

Date: February 2, 2023                                  *s/Norah McCann King*
                                                           NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE